88 N.J. Super. 199 (1965)
211 A.2d 386
THERESA POST, INDIVIDUALLY AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JOHN POST, JR., DECEASED; CARMELLA LENA FRESCO WILEY, INDIVIDUALLY AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JAMES D. WILEY, DECEASED, PLAINTIFFS-APPELLANTS,
v.
MANITOWOC ENGINEERING CORPORATION, A WISCONSIN CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 1965.
Decided June 21, 1965.
*202 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Myron W. Kronisch argued the cause for appellants (Messrs. Roskein, Kronisch & Felzenberg, attorneys).
Mr. Sidney M. Schreiber and Mr. Roger F. Lancaster argued the cause for respondent (Messrs. Schreiber, Lancaster & Demos, attorneys; Mr. Gerald W. Conway, on the brief).
The opinion of the court was delivered by SULLIVAN, J.A.D.
This is an action for wrongful death.
John Post and James D. Wiley were employed as iron workers by the Lehigh Construction Co., which was building a bridge over the Delaware River at Scudder's Falls. While working on an island in the river within the Pennsylvania border, they were killed when a crane being used on the job collapsed and crushed them.
The instant suit was filed by their widows under the Pennsylvania wrongful death statute (12 P.S. § 1601 et seq.) charging defendant as the manufacturer of the crane with negligence and breach of warranty. Prior to trial the warranty counts were dismissed on defendant's motion. The negligence counts were tried before a jury which returned a unanimous verdict of no cause for action. Judgment was entered accordingly. Plaintiffs appeal from the whole of the judgment, including the dismissal of the warranty counts, as well as from the order of the trial court denying plaintiffs' motion for a new trial.
The crane had been manufactured by defendant and sold to Lehigh Construction Co., which was using it in the bridge building operation. The crane was movable and operated on *203 tank type crawlers or treads. It had a 100' boom and, operating at an 18' radius, had a rated capacity of 90,000 pounds according to the capacity chart issued by defendant.
The accident occurred on June 30, 1959. A large girder had been transported to the island by a pole truck and the crane was used to lift the girder from the truck. The load being lifted, including equipment, was approximately 83,000 pounds. The operator of the crane, after lifting the load, then started to move the crane with the suspended girder. The crane had traveled about 20 feet when the right crawler settled in the dirt. The operator stopped the crane and was about to lower the girder when the boom buckled and collapsed crushing decedents.
Plaintiffs charged that the crane was negligently designed, constructed, tested and manufactured. Plaintiffs' experts testified that a properly designed and manufactured crane would have allowed for some operating variations from an absolutely level base, and that the amount of the settlement of the right crawler which took place, without more, was not enough to have caused the boom to buckle. Among the deficiencies which plaintiffs' experts found in the design and manufacture of the crane in question were flattening of the ends of the lacing bars, inadequate and improper welding, use of a steel which was not designed for welding, improper arrangement of the lacing bars, lack of proper inspection and testing. They also testified that the capacity chart issued by defendant for its cranes rated the boom by column strength rather than by tipping load, and this was not in accordance with good standards of the industry. In effect, it was claimed that a properly constructed crane would tip first rather than buckle, thereby warning the operator of impending danger.
Generally speaking, the boom of the crane consists of the chords or columns which run lengthwise and form the outline of the boom. Lacing bars are short pieces of metal braces which run at an angle between two chords. They are attached to the chords on the four sides of the boom in a symmetrical pattern called lacing. Inside the framework formed by the *204 chords and lacing bars are cross support braces running diagonally between the chords.
Defendant's contention was that the crane buckled and collapsed not as the result of faulty design or construction, but rather due to the negligent operation thereof on soft and sandy ground. This in turn caused the right crawler to settle and the heavy load to swing over, thereby subjecting the boom to a lateral strain beyond its capacity to withstand. According to defendant, cranes are designed to operate only on firm and level base, and a crane cannot be built to withstand side strain.
The trial herein took about six weeks. The combined appendices on this appeal total more than 3,700 pages. Plaintiffs do not contend that the verdict was against the weight of evidence. Rather, a multitude of prejudicial trial errors is alleged. Regretfully, we conclude that substantial error hereinafter detailed was committed and that plaintiffs did not have a fair trial. [A portion of the opinion not material to publication has been omitted.]
The substantial error which we find was the refusal of the trial judge to charge as to liability should the jury conclude that the accident was caused by the concurrent negligence of defendant and Lehigh (the owner and operator of the crane). Counsel for plaintiffs had asked for such a charge and had submitted written requests thereon. This point, in our opinion, was material to the case. True, plaintiffs had not specifically pleaded the concurrent negligence of defendant and Lehigh, but it was unnecessary to so plead. Plaintiffs could not sue Lehigh for damages because decedents had been its employees. The gravamen of plaintiffs' complaint was that the accident happened because the crane had been improperly designed, constructed, tested and manufactured. Defendant, on the other hand, contended that it was not the crane but rather the manner of its operation thereof which caused the accident. However, this did not leave the jury with but two alternatives. It was entirely possible that the jury might conclude, in light of the testimony adduced by *205 plaintiffs and countered by defendant, that the collapse of the boom was caused by the design and manufacture of the crane as well as its method of operation. Counsel for plaintiffs in his opening to the jury stressed this as an alternative basis for liability. Again, in summation, he argued that plaintiffs were entitled to a verdict even if the jury should find concurrent negligence, and told the jury that the court would charge that such was the law. Counsel for defendant made no objection to these contentions. Nevertheless, the trial court refused to instruct the jury as to this matter on the ground that the principle of concurrent negligence had no application to the case as presented.
Actually, defendant's attorney seems to have realized that, in refusing to charge concurrent negligence, the trial court was falling into error, and tactfully suggested that the real fault was in the form of plaintiffs' requests to charge. He had no objection to giving plaintiffs' attorney an opportunity to hand up a request on concurrent negligence in proper form. Nevertheless, the court adhered to its position that it was not an issue in the case and declined to charge it in principle.
Defendant now argues that the court's charge on negligence and proximate cause was adequate to instruct the jury that if it found any negligence on defendant's part which proximately caused the accident, defendant should be held liable therefor, and that the causal connection between any negligence on defendant's part and the accident would be considered broken only if the jury were to conclude that Lehigh was solely negligent. In short, defendant argues that the jury was told that if it found concurrent negligence on the part of defendant and Lehigh, plaintiffs were entitled to recovery.
Concurrent negligence is directly related to proximate cause. It is not a separate issue which must be pleaded by the plaintiff. If the proofs in the case present a situation where the jury could find that the plaintiffs' damage was caused not only by the defendant's negligence as charged, but also by the negligence of a third party, the principle of concurrent negligence is applicable as a part of proximate cause. Menth v. *206 Breeze Corp., 4 N.J. 428 (1950); Robbins v. Thies, 117 N.J.L. 389 (E. & A. 1937); Andreoli v. Natural Gas Co., 57 N.J. Super. 356 (App. Div. 1959).
An automobile accident is a typical example. An injured passenger in one vehicle brings suit against the driver of the other automobile charging that his negligence was the cause of the accident. The defendant pleads that the accident was caused not by his negligence but rather by the negligence of the driver of the automobile in which plaintiff was riding. Must plaintiff plead an alternative claim of the concurrent negligence of both drivers, even though only one is being sued, in order to have the trial judge charge that plaintiff is entitled to recover if the jury should find both drivers to have been jointly negligent? We think not. Such a charge would only relate proximate cause to the facts of the case. Cf. Kreis v. Owens, 38 N.J. Super. 148 (App. Div. 1955).
A case directly in point is Iannucci v. Lamb, 123 Conn. 142, 193 A. 212 (Sup. Ct. Err. 1937). There, plaintiff, a passenger in a motor vehicle, was injured in a collision involving three vehicles. Plaintiff sued the driver of one of the vehicles. A jury verdict for defendant was set aside by the trial judge on the ground that he had failed to instruct the jury on concurrent negligence. In affirming the trial judge's action the Supreme Court of Errors of Connecticut said:
"It is true that the plaintiff made no claim that there was concurrent negligence, but alleged and claimed that the collision was due solely to the conduct of the defendant. Since each tortfeasor may be sued separately, no allegations are required in the complaint except such as properly set forth the liability of the defendant sued, and when the defendant produces evidence of the negligence of a third party the jury may find that his negligence concurred with that of the defendant, thereby rendering instructions proper, and under circumstances such as in the present case, necessary, as to the legal effect of such a situation upon the plaintiff's right to recover." (193 A., at p. 213)
In the instant situation the evidence presented a jury question as to whether or not there was concurrent negligence. Therefore plaintiffs, having specifically requested it, *207 were entitled to have the trial court charge the jury that there should be a verdict for plaintiffs if the jury found that the accident was the result of the concurrent negligence of defendant and Lehigh. Failure to so charge materially prejudiced the plaintiffs' case since the jury was left to draw its own conclusions as to what the law was should it determine that both defendant and Lehigh were negligent. The general language of the charge dealing with negligence and proximate cause failed to instruct the jury how it should apply these principles to the facts as it found them. Kreis v. Owens, supra. As stated in 38 Am. Jur., Negligence § 370, p. 1089 (1941): "Mere abstract legal rules applicable to any negligence case, or mere statements of the law of negligence in general terms, even though correct, should not be given unless they are made applicable to the issues in the case at bar."
Actually, the court's charge might well have been reasonably understood as requiring a verdict for defendant if the jury found concurrent negligence, for the jury was told, "the plaintiffs must prove that some act or acts of the defendant were negligent as previously defined and that this negligence was the proximate cause of the collapse of the boom." (Emphasis added)
Our ruling that a new trial must be had makes it unnecessary to discuss many of the matters argued in the respective briefs. As to the remaining points, some comment is necessary.
Defendant argues that the testimony of plaintiffs' experts was incompetent and the credible evidence failed to make out a prima facie case against defendant. In our opinion, the trial court properly refused to strike the testimony of plaintiffs' experts as incompetent. We also agree with his ruling that plaintiffs had established a jury question of liability.
We are in accord with the action of the trial court striking plaintiffs' counts based on express and implied warranty. It is undisputed that the accident occurred in Pennsylvania and that the substantive law of that state controls. *208 The Pennsylvania wrongful death statute under which this suit was brought limits liability to death "occasioned by unlawful violence or negligence" and does not provide for suit based upon breach of warranty. Simone v. Felin & Co., 35 Pa. Dist. & Co. 687 (Pa. C.P., Phila. Co. 1939); Frankel v. Styer, 201 F. Supp. 726 (E.D. Pa. 1962); Sacks v. Creasy, 211 F. Supp. 859 (E.D. Pa. 1962). It is also clear that under Pennsylvania law there can be no recovery for death outside of the wrongful death statute. Frazier v. Oil Chemical Co., 407 Pa. 78, 179 A.2d 202 (Sup. Ct. 1962). The warranty counts, therefore, were properly dismissed and plaintiffs' motion to amend properly denied.
The magazine article written by Mr. Stanley should not have been used by defendant to cross-examine Dr. Crandall, nor allowed to be marked in evidence. It was not shown to be either a safety code or a learned treatise. Ruth v. Fenchel, 21 N.J. 171 (1956); McComish v. DeSoi, 42 N.J. 274 (1964). The fact that Mr. Stanley was later called as an expert witness by defendant did not make the article evidential or ameliorate the effect of its prior improper use.
The U.S. Steel safety manual and booklet were properly admitted under the safety code doctrine since they were offered in connection with expert testimony and were shown to "represent[s] a consensus of opinion carrying the approval of a significant segment of an industry." McComish v. DeSoi, supra, at p. 282. However, such admission should have been followed by an adequate charge as to the proper weight and scope to be afforded such evidence. McComish v. DeSoi, supra, at pp. 282-286.
We agree with the refusal of the trial court to allow plaintiffs to introduce evidence relating to the collapse of one of defendant's cranes in Alberta, Canada, in 1956. This would have simply raised collateral issues in an already very complicated case.
Reversed and remanded for a new trial.