GEORGE PANAS, *ETC.*, *ET ALS.*, PLAINTIFFS-RESPON-
DENTS, v. NEW JERSEY NATURAL GAS. COMPANY,
*ETC.*, DEFENDANT-APPELLANT.

CITY OF ASBURY PARK, A MUNICIPAL CORPORATION,
PLAINTIFF-RESPONDENT, v. NEW JERSEY NATURAL
GAS COMPANY, A CORPORATION, DEFENDANT-AP-
PELLANT.

Argued March 22, 1971—Decided October 5, 1971.

Mr. *Gerald W. Conway* argued the cause for defendant-appellant (*Messrs. Schreiber and Lancaster,* attorneys; *Mr. Sidney M. Schreiber,* of counsel; *Mr. Conway,* on the brief).

*Mr. Nathan Baker* argued the cause for City of Asbury Park, plaintiff-respondent (*Messrs. Baker, Garber, Duffy and Baker,* attorneys; *Mr. Nathan Baker,* of counsel).

*Mr. Herman D. Michels* argued the cause for George Panas and others, plaintiffs-respondents (*Messrs. Michels, Schwartz and Maher,* attorneys; *Mr. Michels,* of counsel).

PER CURIAM. Two very serious fires, occurring on August 6 and September 11, 1963, caused extensive damage to the boardwalk in Asbury Park and to the property of the proprietors of certain adjoining stores. Suits for damages were brought by the municipality and by the storekeepers against New Jersey Natural Gas Company, which owned and operated a gas pipeline installed immediately under the boardwalk. These actions were consolidated and the case was tried solely on the issue of liability.

Following a trial of seven weeks, a jury verdict of no cause of action was returned as to all claims. A motion for a new trial having been denied, plaintiffs appealed to the Appellate Division which, in an unreported opinion, reversed the judgment below and remanded the matter for a new trial. This court granted defendant's petition for certification. 57 *N. J.* 142 (1970).

The conceptual grounds upon which plaintiffs proceeded, although never very clearly articulated, seem to have been two. It was first claimed that defendant had been negligent in permitting gas to escape from its pipeline, that this gas then ignited and caused or substantially contributed to the conflagration which resulted in damage to plaintiffs. Secondly, and less clearly, plaintiffs contended that defendant installed its pipeline at a place where it was reasonably foreseeable that there might be fires and that these fires might very likely rupture the line, thus permitting gas to escape which would in turn ignite. Hence, it was argued, such allegedly misplaced installation was itself an act of negligence.

At the time of the fires the boardwalk was relatively new. The planks or beams of which it was constructed, in order to make them more resistant to wear, had been heavily impregnated with creosote. This substance, according to certain testimony, emits a smell somewhat similar to that of odorized natural gas and, like gas, is distinctly flammable at a certain temperature. On the ocean side of the structure, in an effort to control beach erosion, a solid bulkhead had been built between the lower side of the boardwalk and the beach. The spaces between the planks of the boardwalk itself, however, were 3/16th of an inch wide so that the space beneath, although a closely chambered area, was by no means airtight.

Defendant's pipeline consisted of a single strand of 4 inch pipe suspended by chains from the lower side of the boardwalk. Service lines to accommodate consumers extended laterally into the various establishments. Pressure within the pipe was ¼ pound per square inch.

All parties conceded that both fires — remarkably similar — were of unknown origin. Each was out of control very quickly, becoming a raging blaze well before any firefighting equipment could be brought to bear. Each was accompanied by billowing clouds of very dark smoke in addition to the flames.

The Appellate Division rested its conclusion that the judgment should be reversed upon alleged errors found in the judge's charge to the jury. These will be separately examined.

■ Upon the issue of proximate cause the court's charge stated that unless defendant's negligence was *the* proximate cause of the damage there could be no recovery. Plaintiffs' counsel took prompt exception and requested a corrective charge to the effect that defendant's negligence need only have been *a* proximate cause — not necessarily *the* proximate cause — of the damage, in order for there to be a recovery. The judge at once recognized the validity of the

argument, recalled the jury, and gave the following supplemental instruction,

> Now, ladies and gentlemen, it's been brought to my attention and properly so that it's possible that I charged you with regard to proximate cause, that the plaintiffs have the duty of proving by a preponderance of the credible proof the negligence of the defendant which was the proximate cause of any damage. It should have been a proximate cause because the plaintiffs have the burden of proving by a greater weight of the credible proof the negligence of the defendant was a proximate cause of the damages. The obligation of the plaintiff on this issue is satisfied if the plaintiff establishes that the defendant's negligence was a proximate cause which concurred with the negligence or actions, even criminal, of somebody; a proximate cause, not the sole proximate cause.

This statement seems clearly to have corrected the error to which the charge was originally subject. Unlike *Ellis v. Caprice*, 96 *N. J. Super.* 539 (App. Div. 1967), certif. denied 50 *N. J.* 409 (1967), cited by the Appellate Division, and other similar cases, the jury here was not left in any doubt as to which of the two conflicting statements correctly announced the rule to be followed. The judge pointed out the error in his original charge and then stated the correct rule. The result is clearly to free the charge from what might otherwise have been error. We furthermore point out that following the corrective instruction, no further exception was taken by plaintiffs' counsel who were apparently entirely satisfied.

The Appellate Division also ruled that the trial court's charge on circumstantial evidence should not have been given. Again we disagree. All counsel requested a charge on circumstantial evidence, although wording their requests differently. No exception was taken by any plaintiff to the fact that the charge upon this point was given, but only to the phraseology employed by the court. We think the charge was appropriate and correctly stated the law. The principal issue was whether or not gas escaped from defendant's pipeline and there was practically no direct

evidence that this in fact occurred. Plaintiffs were relying almost entirely upon circumstantial evidence to prove their case and it is hard to see how a full and adequate charge could have omitted the customary admonitions normally given to guide a jury where a party relies upon circumstantial evidence. The language employed by the court, as noted in the opinion of the Appellate Division, is largely taken from the opinions of this court in *Hansen v. Eagle-Picher Lead Co.*, 8 *N. J.* 133, 141 (1951) and *Long v. Landy*, 35 *N. J.* 44, 54 (1961).

The trial judge refused to charge that defendant was not relieved of liability merely because its negligence may have combined with some other independent, intervening cause to produce the injury. While we think such a charge would have been proper, we do not deem its omission to have been error. Indeed, the judge might have felt that such a charge would be confusing. Defendant had not argued or contended that any intervening cause was responsible for the damage. The only possible intervening cause was an act, or conceivably an omission to act, on the part of someone unknown, which started the fire. It was never claimed, nor could the jury have reasonably believed, that this bore in any way upon the question of defendant's liability.

One of plaintiffs' experts testified that defendant's installation was contrary to industry standards and in violation of certain sections of the ASA Standard Code for Pressure Piping, Gas Transmission and Distribution Piping Systems, which has been incorporated into the Regulations of the New Jersey Board of Public Utility Commissioners. Defendant's expert categorically denied this and described the installation as meeting all relevant standards. The actual provisions of the Code were not introduced. The jury was left with little more than conclusory statements of experts in a highly technical field. The trial court did advert to this point in its charge to the jury, and we think intelligently and adequately.

■ The final criticism of the charge made by the court below is that the law was not sufficiently related to the particular facts of the case. Although the trial was long drawn out and the testimony often highly technical, the issues themselves were relatively simple. Certainly some more precise reference to the particular acts or omissions which might have given rise to negligence would have been appropriate and perhaps helpful, but we find no reversible error. We see no reason to believe that the jury was in any way misled nor that it failed to grasp the issues before it.

■ We are the more confirmed in this conclusion from our own careful examination of the whole record, which brings us to plaintiffs' argument — not touched upon by the Appellate Division — that the verdict was contrary to the weight of the evidence. The burden of proof was of course upon plaintiffs and the jury could reasonably have found that this burden was not sustained. Defendant's chief expert took the position that gas played no part in either fire and on all the evidence the jury could well have agreed. On motion for a new trial, the judge refused relief upon the ground that the verdict was contrary to the weight of the evidence and we may not reverse this ruling "unless it clearly and unequivocally appears that there was a manifest denial of justice under the law." *R.* 2:10–1. Substantially the same standard of review applied to the trial judge upon the application for a new trial, *R.* 4:49–1(a). *Dolson v. Anastasia,* 55 *N. J.* 2 (1969).[1]

We agree with the conclusion of the Appellate Division that the conduct of counsel at the trial, of which complaint is made, affords no ground for reversal.

The decision of the Appellate Division is reversed and the judgment of the Law Division is reinstated.

---

[1] Rules 2:10–1 and 4:49–1(a) were amended July 7, 1971, effective September 13, 1971, in response to the criticism of the form of these rules as expressed in *Dolson v. Anastasia, supra.* The purport and meaning of the rules was not changed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and MOUNTAIN—6.

*For affirmance*—None.