ELMER FREUND AND CAROL FREUND, HIS WIFE, PLAINTIFFS-APPELLANTS, v. CELLOFILM PROPERTIES, INC., A BODY CORPORATE; "U" VAULT COMPANY, INC., A BODY CORPORATE; VINING BROOM COMPANY, A BODY CORPORATE; HANOVER INSURANCE COMPANY; STATE OF NEW JERSEY, A BODY MUNICIPAL; AND BOROUGH OF WOODRIDGE, A BODY MUNICIPAL, DEFENDANTS.

and

HERCULES, INC., A BODY CORPORATE,
DEFENDANT-RESPONDENT.

Argued March 24, 1981—Decided July 30, 1981.

*Mark D. Larner* argued the cause for appellants (*Budd, Larner, Kent, Gross, Picillo & Rosenbaum,* attorneys).

*Thomas L. Morrissey* argued the cause for respondent (*Carpenter, Bennett & Morrissey,* attorneys; *Rosemary J. Bruno* and *John P. Dwyer,* on the brief).

The opinion of the Court was delivered by

HANDLER, J.

Plaintiff, Elmer Freund, suffered extensive second and third degree burns in an industrial accident at his employer's paint manufacturing plant. At the time of the accident, Freund was assisting two fellow employees in preparing a large paint mixer for cleaning. As one of the workers swept a commercial chemical dust, nitrocellulose, from the area of the mixer, the chemicals suddenly ignited.

Plaintiff and his wife, Carol, brought this action claiming compensatory and punitive damages against several individuals and corporations, including Hercules, Inc., the manufacturer of the chemical that caused the fire, Cellofilm Properties, Inc., the owner of the industrial property which was the site of the accident, and Cellofilm Corp., the plaintiff's employer. As a result of trial motions, the only defendant left in the case was the manufacturer, Hercules, Inc.

Plaintiffs charged that Hercules, Inc. (Hercules) acted negligently in failing to give adequate warning of the dangers of its product, nitrocellulose. In addition, they sought recovery on strict liability and breach of warranty grounds, alleging that Hercules placed an inherently dangerous product into the stream of commerce without proper warnings. The case was ultimately presented to the jury on the theory of negligence. The specific issues presented in this appeal are (1) whether there is a meaningful distinction between a cause of action based on negligence and one based on strict liability in a products design defect case involving a failure to warn of the product's dangers; (2) whether, under the circumstances of this case, it was reversible error for the trial court to have presented the liability question to the jury on the grounds of negligence rather than strict liability; and (3) whether the jury should have been charged on concurrent negligence as to the employer, who was no longer involved in the trial, and the defendant manufacturer.

I

Plaintiff was employed at Cellofilm Corporation's plant from March 25, 1974 until the date of his accident on July 11, 1974. His work mainly consisted of maintenance and unloading drums of nitrocellulose, an extremely flammable liquid chemical used in the mixing of paints and lacquers.

On July 9, 1974 a chemical mixture was made in a slow-speed mixer at the plant. The mixing process consists of pumping chemicals from outside storage areas into the large mixing

machine and then mechanically dumping liquid nitrocellulose into the mixer. When nitrocellulose is added to a mixer an aluminum shield is placed around the mixer's hatch to prevent spillage of the chemical. However, a small amount of nitrocellulose dust is inevitably spilled outside the mixer during the dumping process. Nitrocellulose is extremely flammable even in liquid form, but when allowed to dry the chemical dust becomes even more dangerous.

On July 11, 1974 Freund and two other workers were assigned to prepare the chute on the mixer for cleaning. They opened the hatch to the mixer and one of the plaintiff's co-workers, Krowska, began sweeping nitrocellulose dust from around the mixer. The entire area suddenly erupted into flames, resulting in severe burns to both plaintiff and Krowska, who ultimately died from his injuries.

The major disputed issues in the case were the exact cause of the fire and the adequacy of the warning provided by the manufacturer of the nitrocellulose, Hercules. One of plaintiffs' experts, Braidech, testified that electrostatic effects in the atmosphere ignited the nitrocellulose dust cloud that had formed while Krowska was sweeping. Another expert, Dunning, concluded however, that the sudden eruption of a "big ball of fire" was the result of vapor ignition from the just-opened hatch. Dunning believed that the cause of the fire was a combination of the failure to wet down the area before sweeping and the failure to render the mixing vessel inert by filling it with water or blowing it out.

Hercules' experts, Doyle and Williams, testified that the sweeping was probably done in the presence of highly flammable vapors escaping from the recently opened mixer. Doyle testified that the least readily ignitable of the vapors was still ten to twenty times more flammable than dry nitrocellulose dust. In Williams' opinion, the vapors from the mixer ignited first, setting off the fire.

The drums of nitrocellulose contained a warning, *viz*:

Fire may result if container is punctured or severely damaged—Handle carefully—Do not drop or slide—Hazard increases if material is allowed to dry—Keep container tightly closed when not in use—In case of spill or fire soak with water—For further information refer to MCA Chemical Safety Data Sheet DS–96.

Below this warning, in large letters, appeared the words

### "DANGER—FLAMMABLE"

Plaintiff testified that he was aware of the "warning" on the drums but had never bothered to read it. Plaintiffs' expert, Braidech, stated that while the warnings contained on the nitrocellulose drums were adequate to warn of the dangers involved in transporting nitrocellulose, they were not sufficient warnings for the job. On cross-examination, however, he admitted that no fire would have occurred had the warnings contained on the drums of nitrocellulose been heeded.

Cellofilm's plant superintendent testified that the company had a long-standing cleanup procedure for dealing with nitrocellulose spills. Employees were instructed to clean up the spills as soon as possible after they occurred and to soak all spills with water before picking them up. A poster provided by the manufacturer, Hercules, and displayed in the employee locker room warned of the dangers of dry nitrocellulose and instructed that in case of a spill, the chemical should be wet with water before cleanup.

Plaintiffs submitted requests for jury charges on the law of negligence and strict liability, as well as the issue of concurrent negligence. Despite plaintiffs' objections, the trial court refused to instruct the jury on strict liability or concurrent negligence. The essence of the strict liability request to charge was that a manufacturer of a product is strictly liable if the product is defective by virtue of inadequate warnings and the "defect" proximately causes injury to a reasonably foreseeable consumer or user. Additionally, the request stated that "[p]roof of the manufacturer's negligence in the making or handling of the article is not required." Addressing plaintiffs' objections to the charge as made, the trial court ruled that a strict liability charge

was inappropriate as a matter of law since any "defect" in the adequacy of the warning would necessarily result from negligence by the defendant.

On the question of the relevance of concurrent negligence, the trial judge chose not to follow the proposed charge. He simply informed the jury that it was to determine if Hercules was negligent and, if so, whether that negligence was a proximate cause of Elmer Freund's injuries. The proposed charge, if given, would have expressly permitted the jury to find defendant, Hercules, negligent even if it concluded that Cellofilm Corp. was also negligent in failing to provide adequate warnings to its employees on the dangers of nitrocellulose. Plaintiffs did not raise a further objection upon the trial court's failure to submit the concurrent negligence charge to the jury. The alleged error, however, was raised at the motion for a new trial and on appeal.

The jury unanimously concluded that Hercules was not negligent and judgment was subsequently entered in its favor. Plaintiffs brought a motion for a new trial, which was denied. On appeal, the Appellate Division affirmed the trial court's decision without opinion and plaintiffs petitioned this Court for certification, which was granted. 85 *N.J.* 453 (1980).

## II

As noted, this personal injury case involves a manufactured product claimed to be defective because of a failure to provide an adequate warning as to its dangers. The primary issue is whether the trial judge committed error in presenting the case to the jury on the theory of negligence rather than principles of strict liability.

The trial court's perception of this case as one involving negligence is not uncommon. The problem stems in large measure from the terminology that historically has been used to define a defective product for strict liability purposes. In instructing juries as to what constitutes a defective product, judges routinely borrow terminology from the law of warranty

and negligence. See *Suter v. San Angelo Foundry & Machine Company*, 81 *N.J.* 150, 168–171 (1979); Wade, "On the Nature of Strict Tort Liability for Products," 44 *Miss.L.J.* 825, 834–835 (1973). In the case of design and, in particular, improper warning defects, the use of negligence terminology is virtually unavoidable since the adequacy of a design or warning necessarily depends upon its "reasonableness." Wade, *supra*, at 836–837. Hence the use of this terminology has led to confusion over what precise differences, if any, exist between the negligence and strict liability theories of recovery in defective product cases, especially where the defect consists of an inadequate warning.

Courts and leading scholars have struggled with these concepts. Some courts have examined and compared the application of strict liability and negligence theories in the inadequate warning area and concluded that there is little, if any, difference between the two theories in this context. *E. g., Sterling Drug, Inc. v. Yarrow*, 408 *F.*2d 978 (8 Cir. 1969); *Rainbow v. Albert Elia Building Co., Inc.*, 49 *A.D.*2d 250, 373 *N.Y.S.*2d 928 (1975). The conclusion reached by these courts has been that "[u]nder either theory, the recovery ultimately depends upon a subjective determination by the trier of the facts of what constitutes reasonable warning under all of the circumstances." *Rainbow v. Albert Elia Building Co., Inc., supra*, 49 *A.D.*2d at 253, 373 *N.Y.S.*2d at 931.

A growing trend of cases and authority, however, has perceived a difference between the utilization of strict liability, as opposed to negligence, in the inadequate warning area. *E. g., Jackson v. Coast Paint and Lacquer Co.*, 499 *F.*2d 809 (9 Cir. 1974); *Aller v. Rodgers Machinery Mfg. Co., Inc.*, 268 *N.W.*2d 830 (Iowa S.Ct.1980); *Ulrich v. Kasco Abrasives Co.*, 532 *S.W.*2d 197 (Ky.S.Ct.1976); *Phillips v. Kimwood Machine Company*, 269 *Or.* 485, 525 *P.*2d 1033 (1974); *Berkebile v. Brantly Helicopter Corporation*, 462 *Pa.* 83, 337 *A.*2d 893 (1975); *Hamilton v. Hardy*, 37 *Colo.App.* 375, 549 *P.*2d 1099 (1976). *Phillips v. Kimwood*

*Machine Company, supra*, a seminal case, enunciated the rationale for the distinction, *viz*:

> In a strict liability case we are talking about the condition (dangerousness) of an article which is sold without any warning, while in negligence we are talking about the reasonableness of the manufacturer's actions in selling the article without a warning. [269 *Or.* at 498, 525 *P.*2d at 1039.]

In other words, these courts have viewed the strict liability approach as product-oriented, as opposed to the negligence approach which is conduct-oriented. See, *e. g., Jackson v. Coast Paint and Lacquer Co., supra*, 499 *F.*2d at 812.

To evaluate the significance of this asserted distinction, the clearest guideline is found in an examination of what is meant by "dangerousness of the article" and how that differs from the standard of "reasonable actions of a manufacturer." The Oregon Court, for example, which perceived a difference between strict liability and negligence theory in this context, proffered an archetypal definition of the strict liability concept of dangerousness as follows:

> A way to determine the dangerousness of the article, as distinguished from the seller's culpability, is to assume the seller knew of the product's propensity to injure as it did, and then to ask whether, with such knowledge, he would have been negligent in selling it without a warning. [*Phillips v. Kimwood Machine Company, supra*, 269 *Or.* at 498, 525 *P.*2d at 1039]

Thus despite the court's attempt to repudiate the negligence approach, rooted in the manufacturer's conduct, its definition of dangerousness retained indicia of that very theory. In that sense, the product approach appears to vary little from the conduct approach.[1]

---

[1]The reason for the elusive nature of the differences between the approaches in inadequate warning cases relates to the basic theory of strict products liability. Central to this theory is the risk-utility equation for determining liability. The theory is that only safe products should be marketed—a safe product being one whose utility outweighs its inherent risk, provided that risk has been reduced to the greatest extent possible consistent with the product's continued utility. In the case of a design defect consisting of an inadequate warning, however, imposing the requirements of a proper warning will seldom detract from the utility of the product. It can readily be assumed that if a reasonable manufacturer can make his product safe without

There is one important difference between the two approaches, however, highlighted by the *Phillips* discussion: under strict liability, the seller's knowledge is presumed; it is "assume[d] the seller knew of the product's propensity to injure as it did." *Id.* In negligence cases, such knowledge must be proved; the standard is what the manufacturer "knew or should have known."

Scholarly opinion is generally in accord with this conclusion. Professor Keeton, a prominent advocate of the strict liability approach in these cases, has opined that although the same kind of dangerous conduct is required to hold one liable under strict liability or negligence, "the fact that the maker was excusably unaware of the extent of the danger and had not committed any negligent act or omission that caused the danger would be entirely irrelevant [in strict liability cases]." R. Keeton, "Products Liability—Inadequacy of Information," 48 *Tex.L.Rev.* 398, 407–408 (1970).

Likewise, Professor Wade suggests a separate strict liability charge which recognizes the same distinctions perceived by Professor Keeton. He proposes that the following analysis be applied. First, it should be assumed that the defendant knew of the dangerous conditions, if any, that the plaintiff has proven at trial; such knowledge is imputed to the manufacturer as a matter of law. Second, it must be shown that the defendant was negligent to people who might be harmed by the product as a result of its dangerous condition. Wade, *supra*, 44 *Miss.L.J.* at 834–835. Thus, the weight of authority agrees on one proposition: that when a plaintiff sues under strict liability, there is no need to prove that the manufacturer knew or should have known of any dangerous propensities of its product—such knowledge is imputed to the manufacturer.

---

impairing its utility, failure to do so would constitute negligence. This explains why, in an inadequate warning case, the product-oriented and conduct-oriented approaches appear similar.

Although this Court has never considered the precise question of whether there exists any true difference in the proofs necessary to establish negligence, as opposed to strict liability, in an inadequate warning products liability case,[2] the principles illuminated above are basically consistent with our recent decisional law. The Court in *Suter v. San Angelo Foundry & Machine Company, supra,* in discussing a design defect case, pointed out that in charging the jury as to the standards of liability applicable to the manufacturer, it must be "assum[ed] that the manufacturer knew of the harmful propensity of the product." 81 *N.J.* at 171. We further concluded in that case that where the design defect was not self-evident, "the trial court should also charge the jury on whether the manufacturer, it being deemed to have known of the harmful propensity of the product, acted as a reasonably prudent one." 81 *N.J.* at 177. To the same effect, see *Cepeda v. Cumberland Engineering Company, Inc.,* 76 *N.J.* 152, 172 (1978).

We agree with the weight of authority that there is a significant distinction between negligence and strict liability theory, at least in terms of imputing to the manufacturer knowledge of the dangers inherent in the product. Thus, given the importance of user protection and the need for uniformity and consistency in products liability cases,[3] we hold generally that in

---

[2]The Appellate Division, however, in dicta, noted in one case that it viewed "the gist of the cause of action based on an alleged inadequate warning [as] the same" under negligence and strict liability. *Torsiello v. Whitehall Laboratories,* 165 *N.J.Super.* 311, 320–321, n.2 (App.Div.1979), certif. den., 81 *N.J.* 50 (1979). Nonetheless, in that case, the court stated that it was in "full accord" with the trial court's determination that the theory of strict liability was "exclusively applicable" in the inadequate warning context. *Id.* at 318.

[3]As Professor Keeton has argued:

[i]f strict liability is to be applied against a maker when he is excusably unaware of a latent defect involved in the use of a product (as in the case of manufacturing defects), then it would seem to be quite clear that when the maker is guilty of fault in failing to discover an inherent risk, liability should be equally as extensive. Moreover ... the question whether a product was properly designed is inseparable from the question whether

inadequate warning design defect cases, a strict liability charge should be given.

## III

The question still remains as to the significance of the trial court's insistence on charging the jury solely based upon negligence. To evaluate this issue next entails an inquiry as to the elements that must be included in an appropriate charge to a jury in a case where the alleged defect consists of an inadequate warning of product safety.

A charge to a jury in a case of this sort would, at a minimum, normally consist of a general products liability charge applicable to non-self-evident defects—such charge to include the elements of proximate cause, reasonable foreseeability, and the like—as well as an explicit charge concerning the duty to warn. Thus, in evaluating the appropriate charge in this case, we must first turn to our recent case of *Suter v. San Angelo Foundry & Machine Company, supra.*

In *Suter*, the Court observed that in a design defect case a jury should be instructed in terms of the product's safety, as well as its fitness and suitability for its intended or foreseeable purposes. 81 *N.J.* at 176. In adopting this approach to a proper jury charge in a design defect case, the Court concluded that the terminology "defective condition unreasonably dangerous," that had been advocated in *Cepeda v. Cumberland Engineering Company, Inc., supra,* had the potential for imposing a dual burden on a plaintiff—to show both a defect and that the defect created an unreasonably dangerous condition.

We continue to adhere to the view that the language "defective condition unreasonably dangerous" has the potential for misunderstanding, is not apt and should be rejected. See R.

---

adequate instructions are provided to insure safe usage. To deal with the first on the basis of strict liability and the second on the basis of negligence cannot make very much sense. [48 *Tex.L.Rev.* at 403.]

Epstein, *Modern Products Liability* 65 (1980). We do so not because the Phraseology "defective condition unreasonably dangerous" is legally unsound but because it may create an impression in the mind of the jury that a double burden is present.

We must therefore apply *Suter* to the instant case, bearing in mind its admonition that while the jury in a design defect case should be charged generally "in terms of whether the product was reasonably fit, suitable and safe for its intended or foreseeable purposes ... [t]he instruction should be tailored to the factual situation to assist the jury in performing its fact-finding responsibility." 81 *N.J.* at 176. We thus recognized in *Suter* that jury instructions might have to be molded to take into account particular design defects, "[f]or example, a product may be unsafe because of inadequate instructions ..." *Id.* In realizing the need for flexibility, the Court also noted that fitness and suitability are "terms largely synonymous with safety." *Id.* at 169.

Accordingly, then, we must carefully structure the charge best applicable to the context presented here. As we noted in *Suter*, in the instruction or warning situation, safety is the predominant factor in determining the adequacy of the manufacturer's efforts. The reason for this is that where the design defect consists of an inadequate warning as to safe use, the utility of the product, as counterbalanced against the risks of its use, is rarely at issue. Consequently, the elements of product fitness or suitability, relating to utility, are not particularly germane. *Ante* at 238, n.1. Though, in a sense, inadequate warning is related to fitness and suitability, it appears preferable to charge the jury in terms of safety, for fitness and suitability are subsumed by the concept of safety where the design defect consists of an inadequate warning involving safety of the product.

Hence, a products liability charge in an inadequate warning case must focus on safety and emphasize that a manufacturer, in marketing a product with an inadequate warning as

to its dangers, has not satisfied its duty to warn, even if the product is perfectly inspected, designed, and manufactured. Moreover, and importantly, the charge must make clear that knowledge of the dangerous trait of the product is imputed to the manufacturer. It must also include the notion that the warning be sufficient to adequately protect any and all foreseeable users from hidden dangers presented by the product. This duty must be said to attach without regard to prevailing industry standards. In short, it must be explained that an adequate warning is one that includes the directions, communications, and information essential to make the use of a product safe.

## IV

In this case, despite the admission by Hercules that it knew of the harmful propensities of its product, we conclude that there is a sufficient difference between the strict liability charge we have developed, and the negligence charge actually given, to justify a reversal. The terminology employed by the trial judge was riddled with references to negligence, knowledge and reasonable care on the part of a manufacturer and industry standards, as well as terms of limitation.[4] While the actual

---

[4]For example, the jury charge included the following language:

To recover, the party suing must establish that the party being sued, whom we call the defendant, was negligent and that this negligence was a proximate cause of the happening of the accident ... By the term, proximate cause the law means that the negligent conduct of a defendant, the party being sued, must have been the efficient producing cause of the damages claimed by the parties suing who, of course, we call the plaintiff[s] ... The test you are going to apply in determining the issue of negligence is whether or not the defendant exercised under the circumstances involved, the time and place and so forth, the degree of care which a reasonably prudent manufacturer of chemical products ... would have exercised. If the party exercised that care, then the defendant would not be liable. [T]he manufacturer is under a duty to exercise reasonable care in the production, packaging and labeling of its product to protect those who may be reasonably expected to be in the area of the use of the product from unreasonable risk of harm while it is being used for the purpose it was intended ... This, of course, does not mean every

legal standards present in this charge, if minutely parsed, may be broadly consistent with strict liability standards when the element of knowledge is removed, we must be concerned with the effect of the trial judge's articulation upon the jury's deliberative processes. The charge utilized below may have affected the jury's view of the nature and extent of the burden shouldered by the plaintiffs. The jury might well have been led to believe by the wording of the charge that if most manufacturers placed similar warnings on their product and the defendant was careful about formulating and displaying the warnings, the defendant was not culpably negligent, even if the warning was inadequate and the product was still unsafe. Moreover, the charge as to the adequacy of the warning might have misled the jury into believing that such a warning would be proper if confined or related to the intended use of the product, notwithstanding its inadequacy in addressing the risks attendant upon all foreseeable uses.

Furthermore, this charge may well have been viewed as placing a burden on the plaintiff to show the conventional practice of the industry. Under a strict liability theory, this would not be so. Since the plaintiffs may have been induced to prove a fact under negligence that they would not have been required to prove under strict liability, this also would lead to the conclusion and that the trial judge committed reversible error in submitting the case to the jury only on the negligence theory.

Finally, even though defendant Hercules admitted knowledge of the dangers of nitrocellulose, the plaintiffs were never relieved of the burden of proving knowledge. Moreover, the jury was never expressly informed of this concession in terms of the burden of proof. The plaintiffs were entitled to a strict liability charge that clearly and unmistakenly imputed knowledge of the dangers of the product to the defendant.

---

conceivable risk. That may not even be possible in all circumstances. You must bear in mind the circumstances.

We cannot be completely confident that the noted deficiencies in the trial court's charge did not, separately or cumulatively, affect the jury's deliberations and assessment of liability. We conclude, then, that under the facts of this case, the use of the negligence charge was not harmless error.

### V

Plaintiffs further allege that the trial judge's failure to instruct the jury on the substance of their requested charge on concurrent negligence constituted prejudicial error justifying a new trial. The requested charge specifically stated that the jury could find the defendant, Hercules, negligent for marketing a defective product even if it concluded that the plaintiff's employer was also negligent in failing to provide adequate warnings on the dangers of the product to its employees. Such a charge was necessary, the plaintiffs argue, because the essence of the defendant's defense was that the negligence of Cellofilm, Inc. and plaintiff's co-employees caused the fire. We need not consider the issue in view of our determination that the verdict in favor of defendant is to be reversed and the matter remanded for a new trial. Since the case must be retried, however, it is well to clarify this point for the benefit of the parties and the trial judge.

It is, of course, a basic principle of negligence jurisprudence that "there may be two or more concurrent and directly cooperative and efficient proximate causes of an injury." *Menth v. Breeze Corporation, Inc.*, 4 *N.J.* 428, 442 (1950); accord *Andreoli v. Natural Gas Co.*, 57 *N.J.Super.* 356, 367 (App.Div.1959). When that occurs, both tortfeasors are liable even though their individual negligence "was not the sole negligence, or the sole proximate cause, and although [each party's] negligence, without such other independent intervening cause, would not have produced the injury." *Robbins v. Thies*, 117 *N.J.L.* 389, 394 (E. & A. 1937).

Accordingly, the following model charge has been developed.

> When the negligence of two or more persons combines to produce an injury and damages to the plaintiff, the parties concurring in such negligence and bringing about the result are jointly and severally liable for the injury and damages proximately caused thereby, regardless of the degree of their negligent participation.

The trial judge in this case refused to consider this charge or its equivalent, believing that his charge, which required that the defendant's behavior be *a* proximate cause of the accident in order for liability to attach, rather than requiring that it be *the* proximate cause of the injury, was adequate to convey the law to the jury.

Some support for this approach is found in *Panas v. N. J. Natural Gas Co.*, 59 *N.J.* 255 (1971), a case involving the origin of two fires which caused extensive damage. Plaintiffs in that case charged that gas escaping from defendant's pipeline substantially caused and contributed to the fires, or, alternatively, that the defendant was negligent in placing its pipeline where it was foreseeable that there might be fires that would rupture the line, thereby adding to the conflagration. The trial judge in that case at first charged the jury that the defendant's negligence must be "the proximate cause" of the injury, but upon plaintiff's exception, recognized that he had made a mistake, so informed the jury, and recharged them to emphasize that the defendant's conduct need be only *a* proximate cause. This Court held that this correction was sufficient to obviate a finding of reversible error. *Id.* at 257–259.

The primary support for plaintiff's objection to this charge, on the other hand, is the Appellate Division's ruling in *Post v. Manitowoc Eng. Corp.*, 88 *N.J.Super.* 199 (App.Div.1965). *Post* involved a wrongful death action in which the defendant-manufacturer was sued for negligence in the design and construction of a crane that collapsed, killing two construction workers. At trial, counsel for the plaintiffs submitted a requested charge on the law of concurrent negligence since it was possible for the jury to conclude that both defendant and the deceased's employer were negligent. The trial judge refused to deliver the

requested charge and the jury subsequently returned a verdict in favor of the defendant. *Id.* at 202–205.

Judge (now Justice) Sullivan, writing for the court, found error in the failure to charge the jury on concurrent negligence and ordered a new trial. In the absence of such an instruction, the court ruled, "the jury was left to draw its own conclusions as to what the law was should it determine that both defendant and [plaintiff's employer] were negligent." *Id.* at 207. The court also noted that, based on the jury charge given—which stated that "the plaintiffs must prove ... [that defendant's] negligen[ce] was the proximate cause" of the accident—the jury might well have felt bound to return a verdict for the defendant if it found concurrent negligence. *Id.*

We find that neither case is dispositive in the context presented here. In *Post,* the charge utilized talked in terms of *the* proximate cause and not *a* proximate cause. Thus, that charge, as illustrated by *Panas,* was far more egregious than that proffered in this trial.

Nonetheless, in *Panas,* unlike this case, there was no claim against any party other than the gas company. Thus, in that case, there was no potential for the jury to be trapped into believing that it needed to weigh and compare one party's negligence against that of another to determine if a particular defendant should be held liable. A concurrent negligence charge in the *Panas* context would have had no additional effect upon the jury beyond that of the "a proximate cause" charge actually given. Because of the explicit attempt here by Hercules to defend itself by emphasizing the negligence of others, we cannot be sure that a clear concurrent negligence charge would not have made a difference in this case.

We are satisfied that in situations where the conduct of more than one tortfeasor is implicated in the causation of an accident, a charge based on concurrent negligence, as reflected in the model jury charges, should be given, particularly when requested. Accordingly, on remand and the retrial of this

matter, the trial court should charge the jury on concurrent negligence, suitably adjusted to take into account that plaintiffs are contending that Hercules is liable on the basis of design defect strict liability.[5]

## VI

The judgment below is reversed and the matter remanded for a new trial.

CLIFFORD, J., concurring in result.

Neither the passage of time nor the changing composition of this Court has improved my chances of persuading the Court to recognize the error of its ways in *Suter v. San Angelo Foundry & Machine Co.*, 81 *N.J.* 150 (1978). However, not even with a two-year respite since my pertinacious but unsuccessful effort in that case am I about to launch another full-scale assault on the majority's perpetuation of one of the basic flaws in our products liability law, namely, the rejection of the widely-accepted definition of strict liability found in *Restatement (Second) of Torts*, § 402A (1965). Today's effort is limited to an amiable protest against the majority's continued distortion of the risk-utility ingredient of its strict-liability-in-tort analysis.

I would adhere to the *Restatement Second* standard that a manufacturer is subject to strict liability for personal injury caused by its product if plaintiff proves that the injury was caused by a defective condition in the product that rendered it unreasonably dangerous for use. The "defective condition unreasonably dangerous" language comprises an essential concept that must be incorporated into the proper risk/utility analysis in design defect cases, see *Cepeda v. Cumberland Eng'r Co., Inc.*, 76 *N.J.* 152, 171–75 (1978).

For today's purposes I simply point out that since the twenty-seven cases selected from the at least twenty-five jurisdictions that had adopted the *Restatement Second*, section 402A language as of the date *Suter* was handed down, see 81 *N.J.* at

---

[5]We would also note that the jury charge should be adjusted to reflect the fact that the doctrine of concurrent or joint and several liability, in

191–92 (concurring opinion), additional decisions have swelled the numbers. Although string citations are nobody's favorite reading material, the following may profitably be consulted by those interested in keeping up with the modern, enlightened trend of the law on this subject: *Needham v. White Laboratories, Inc.*, 639 *F.*2d 394, 400 (7th Cir. 1981) (applying Illinois law); *Two Rivers Co. v. Curtiss Breeding Service*, 624 *F.*2d 1242, 1250 (5th Cir. 1980) (applying Texas' view of § 402A, held that "it is not enough to find a defect without also finding that the defect is unreasonably dangerous"); *LeBouef v. Goodyear Tire & Rubber Co.*, 623 *F.*2d 985, 988 (5th Cir. 1980) (under Louisiana law, maker of product may be held strictly liable for personal injury due to defect in product that renders product unreasonably dangerous); *Trust Corp. of Montana v. Piper Aircraft Corp.*, 506 *F.Supp.* 1093, 1094 (D.Mont.1981) (under Montana law, manufacturer of product is subject to strict liability where it can be shown that his product was defectively designed so that it was unreasonably dangerous to user or consumer; plaintiff must prove injury caused by "defect, unreasonably dangerous"); *Lenherr v. NRM Corp.*, 504 *F.Supp.* 165, 172 (D.Kan.1980) (under Kansas law, plaintiff must prove product was in a defective condition unreasonably dangerous); *Kellar v. Inductotherm Corp.*, 498 *F.Supp.* 172, 176 (E.D.Tenn.1978), aff'd, 633 *F.*2d 216 (6th Cir. 1981) (under Tennessee law of strict liability, adopting § 402A, plaintiff must prove that product is both defective and unreasonably dangerous); *Mayberry v. Akron Rubber Mach. Corp.*, 483 *F.Supp.* 407, 411–12 (N.D.Okla.1979) (under Oklahoma law of strict liability, applying § 402A, questions whether manufacturer's product was in a "defective condition" and "unreasonably dangerous" are two separate requirements of proof); *Brown v. Clark Equip. Co.*, 618 *P.*2d 267, 275 (Hawaii 1980)

---

contradistinction to concurrent proximate causation, is inapplicable where the alleged joint tortfeasor, in this case the employer, is not a defendant before the court. Furthermore, and regardless of whether all joint tortfeasors are potentially liable, the model charge of concurrent negligence should also be modified so as to reflect the principles of comparative fault and percentage sharing of liability as mandated by the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 *et seq.*

(applying *Restatement Second* definition of "defective condition unreasonably dangerous"); *Dubin v. Michael Reese Hospital*, 83 *Ill.*2d 277, 280, 47 *Ill.Dec.* 345, 346–48, 415 *N.E.*2d 350, 351–53 (Ill.1980) (seller or manufacturer of product is strictly liable for injury to consumer resulting from "defective condition which renders the product unreasonably dangerous," treating "defective" and "unreasonably dangerous" as two separate proofs); *Palmer v. Avco Distr. Corp.*, 82 *Ill.*2d 211, 215, 45 *Ill.Dec.* 377, 379–80, 412 *N.E.*2d 959, 961–62 (Ill.1980) (applying § 402A, held product to be in defective condition, unreasonably dangerous); *Woodhill v. Parke Davis & Co.*, 79 *Ill.*2d 26, 35, 37 *Ill.Dec.* 304, 402 *N.E.*2d 194, 200 (Ill.1980) (same; treating "unreasonably dangerous" inquiry as whether the risk of danger posed by the defective condition outweighs any apparent usefulness of the product); *Elgin Airport Inn v. Commonwealth*, 88 *Ill.App.*3d 477, 43 *Ill.Dec.* 620, 410 *N.E.*2d 620, 623 (App.Ct.1980) (plaintiff must establish that product "was in a defective condition making it unreasonably dangerous to the user"); *Ryan v. Blakely*, 71 *Ill.App.*3d 339, 348, 27 *Ill.Dec.* 540, 547, 389 *N.E.*2d 604, 611 (App.Ct.1979) (strict liability imposed on manufacturer of product that is unreasonably dangerous to user or consumer by virtue of a defective condition or design); *Lukowski v. Vecta Educ. Corp., Ind.App.*, 401 *N.E.*2d 781, 786 (Ct.App.1980) (strict liability imposed when product is in an unreasonably dangerous defective condition); *Bemis Co., Inc. v. Rubush, Ind.App.*, 401 *N.E.*2d 48, 57 (Ct.App.1980) (question of strict liability under § 402A is whether product is in a defective condition unreasonably dangerous; product may be defective and not unreasonably dangerous); *Kennedy v. Sawyer*, 4 *Kan.App.* 545, 551, 608 *P.*2d 1379, 1384–85 (Ct.App.1980); *Hancock v. Paccar Inc.*, 204 *Neb.* 468, 484, 283 *N.W.*2d 25, 37 (Neb.1979); *Smith v. United States Gypsum Co.*, 612 *P.*2d 251, 253 (Okl.1980); *Smith v. Smith, S.D.*, 278 *N.W.*2d 155, 159 (S.D.1979) (under § 402A, burden on plaintiff to prove "a defect which is unreasonably dangerous"); *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 *P.*2d 152, 158

(Utah 1979) (adopting § 402A *in toto,* nothing that plaintiff must prove that the defective product is unreasonably dangerous); *Shawver v. Roberts Corp.,* 90 *Wis.*2d 672, 681, 280 *N.W.*2d 226, 230–31 (Wis.1979); *Black v. General Elec. Co.,* 89 *Wis.*2d 195, 209, 278 *N.W.*2d 224, 230 (Ct.App.1979) (citing *Cepeda,* noted that § 402A language of "defective condition unreasonably dangerous" should remain in strict liability standard).

I agree with the Court that "in inadequate warning or design defect cases, a strict liability charge should be given," *ante* at 240–241, and hence join in the judgment reversing and remanding. However, I would make the *Restatement Second,* section 402A language an integral part of such a charge.

Justice SULLIVAN joins in this opinion.

SULLIVAN and CLIFFORD, JJ., concurring in the result.

*For REVERSAL and remandment*—Chief Justice WILENTZ and Justice SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance*—None.