Pasquale **MENNA, and Diane Menna, his wife, Plaintiffs,**

v.

**JOHNS–MANVILLE CORP., et al., Defendants.**

**John BARBACCIA, and Eleanor Barbaccia, his wife, Plaintiffs,**

v.

**JOHNS–MANVILLE CORP., et al., Defendants.**

Civ. A. Nos. 80–3575, 81–490.

United States District Court, D. New Jersey.

April 30, 1984.

Timothy C. Bolton, Hal C. Pitkow, Bolton & Pitkow, Philadelphia, Pa., for plaintiffs.

Stephen R. Basser, Krusen, Evans & Byrne, Philadelphia, Pa., for Owens Corning Fiberglas Corp.

Robert M. Kaplan, Yampell & Cosentino, P.C., Haddonfield, N.J., for North American Asbestos Corp.

David M. Fried, Parker, McCay & Criscuolo, P.C., Mount Holly, N.J., for Aetna.

Gita F. Rothschild, McCarter & English, Newark, N.J., for Owens-Illinois, Inc.

David A. Speziali, Buonadonna, Benson & Speziali, Vineland, N.J., for Celotex Corp.

Cynthia Walters, Porzio, Bromberg & Newman, P.C., Morristown, N.J., for Lake Asbestos of Quebec.

HAROLD A. ACKERMAN, District Judge.

These are personal injury actions in which plaintiffs, former employees of Owens-Corning Fiberglas (Owens-Corning) and their spouses, have sued numerous defendants who manufacture and distribute asbestos fibers. Plaintiffs claim that their injuries result from their exposure to asbestos while producing asbestos-based insulation products at the Owens-Corning plant. They allege, *inter alia*, that defendant suppliers' failure to warn of the dangers of exposure to asbestos makes them liable in negligence and strict liability. Defendant suppliers contend that they were absolved of the duty to warn because Owens-Corning was a sophisticated purchaser. They further claim that Owens-Corning's subsequent failure to warn its employees and to adequately protect them from the dangers of asbestos is the superseding cause of plaintiffs' injuries.

These matters are presently before the court on plaintiffs' motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, plaintiffs seek a ruling that mined and milled asbestos is a "product" within the meaning of the Restatement (Second) of Torts § 402A (1965), and therefore that strict liability principles are applicable. They also seek to preclude defendant suppliers from asserting the sophisticated user and superseding cause defenses.

This summary judgment motion was first heard by Magistrate Cowen on May 9, 1983. In a Report and Recommendation filed on May 31, 1983, Magistrate Cowen recommended that plaintiffs' motion be granted in part and denied in part. He concluded that mined and milled asbestos is a product under the Restatement (Second) of Torts § 402A. However, he recom-

mended denial of plaintiffs' motion to preclude defendants' sophisticated user and superseding cause defenses.

Defendant Lake Asbestos of Quebec (Lake) objected to the Magistrate's conclusion that asbestos is a product under the Restatement. Defendants Celotex Corporation, Carey Canada and North American Asbestos Corporation have joined in Lake's objection. Plaintiffs, joined by Owens-Corning, plaintiffs' employer, objected to the Magistrate's conclusion that the sophisticated user and superseding cause defenses should not be foreclosed.

■ This matter is presently before me to review the Magistrate's recommendation of May 31, 1983. Pursuant to 28 U.S.C. § 636(b)(1), I must make a *de novo* determination with respect to those portions of the report to which objections have been made. After having carefully considered the parties' briefs, as well as arguments made to the court on September 19, 1983, I have decided to adopt the Magistrate's recommendation that mined and milled asbestos be treated as a product under the Restatement. I have also determined that the superseding cause defense should be available with respect to both plaintiffs' negligence and strict liability counts. However, I have concluded that the sophisticated user defense should only be allowed as to plaintiffs' negligence claims but not as to their strict liability claims.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is not to be granted unless, after all reasonable inferences are drawn in favor of the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See, DeLong Corp. v. Raymond International*, 622 F.2d 1135 (3d Cir.1980).

■ While the New Jersey Appellate Division has recently determined that asbestos is a product under strict liability law, *Fischer v. Johns-Manville Corp.*, 193 N.J.Super. 113, 472 A.2d 577 (App.Div. 1984), the New Jersey Supreme Court has not yet addressed this precise question.

Under these circumstances, my task is to predict how New Jersey's highest court would rule on the facts before me. As stated by Judge Adams in *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657 (3d Cir.1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980):

Although some have characterized this assignment as speculative or crystal-ball gazing, nonetheless it is a task which we may not decline.

An accurate forecast of (New Jersey's) law, as it would be expressed by its highest court, requires an examination of all relevant sources of that state's law in order to isolate those factors that would inform its decision. The primary source that must be analyzed of course, is the decisional law of the (New Jersey) Supreme Court ... It is important to note, however, that our predictions "cannot be the product of a mere recitation of previously decided cases." ... Rather, relevant state precedents must be scrutinized with an eye toward the broad policies that informed those adjudications, and to the doctrinal trends which they evince.

*Id.* at 661–62 (footnotes omitted). Additionally he notes that while lower state court decisions are entitled to some consideration, they are not controlling in the absence of authority from the highest court. *Id.*

■ In *Fischer*, Judge Pressler held that because "asbestos suppliers do process and package the material and are reasonably regarded as its producers", asbestos is therefore a product within the intendment of § 402A. 193 N.J.Super. at 152, 472 A.2d 588. An examination of New Jersey precedents along with the policies expressed in the Restatement leads me to predict that this decision will be followed by the New Jersey Supreme Court.

With one modification noted below, the New Jersey courts have adhered to § 402A of the Restatement to define the scope of a cause of action in strict liability in tort:

402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*See, e.g., O'Brien v. Muskin Corp.*, 94 N.J. 169, 463 A.2d 298 (1983), *Suter v. San Angelo Foundry & Machine Co.*, 81 N.J. 150, 406 A.2d 140 (1979). New Jersey's courts have rejected the "defective condition unreasonably dangerous" language of § 402A. Instead, they have focused the inquiry in strict liability actions on whether a product is "reasonably fit, suitable and safe for its intended or foreseeable purposes." *Id.* at 176, 406 A.2d at 153.

While the authors of § 402A did not determine whether raw materials should be deemed products under this section, they did provide some guidance in this area. Comment p to § 402A states:

It seems reasonably clear that the mere fact that the product is to undergo processing, or other substantial change, will not in all cases relieve the seller of liability under the rule stated in this Section. If, for example, raw coffeebeans are sold to a buyer who roasts and packs them for sale to the ultimate consumer, it cannot be supposed that the seller will be relieved of all liability when the raw beans are contaminated with arsenic, or some other poison. Likewise the seller

of an automobile with a defective steering gear which breaks and injures the driver, can scarcely expect to be relieved of the responsibility by reason of the fact that the car is sold to a dealer who is expected to "service" it, adjust the brakes, mount and inflate the tires, and the like, before it is ready for use. On the other hand, the manufacturer of pigiron, which is capable of a wide variety of uses, is not so likely to be held to strict liability when it turns out to be unsuitable for the child's tricycle into which it is finally made by a remote buyer. The question is essentially one of whether the responsibility for discovery and prevention of the dangerous defect is shifted to the intermediate party who is to make the changes.

Plaintiffs contend, following the logic of this comment, that the question turns on whether mined and milled asbestos more closely resembles coffee beans or pigiron. They claim that suppliers of raw asbestos, like the seller of contaminated coffee beans referred to in comment p, should be subject to strict liability principles. The analysis suggested in that comment for resolving this question involves a consideration of whether responsibility for the dangers of the "product" should be shifted to the intermediate party.

Plaintiffs have explained the process by which asbestos is mined, milled, bagged and shipped to manufacturing plants. They maintain that the chemical composition of asbestos fiber is in no way changed by its subsequent processing. Although defendants have elucidated the method by which mined and milled asbestos fibers supplied to Owens-Corning were transformed into insulation products, they have not presented any evidence which would demonstrate that the manufacturing process at the Owens-Corning plant either altered or increased the dangers of exposure to asbestos. In fact, defendants do not claim that the asbestos which they supplied to Owens-Corning became more dangerous through the manufacturing process or that the dangerous propensities of asbestos did

not exist earlier. It is well documented that exposure to asbestos dust can have pathological consequences whether the dust emanates from processed or unprocessed asbestos. *See, Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), *Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357 (E.D.Pa.1982), *Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 73 Ill.Dec. 350, 454 N.E.2d 210 (1983), I. Selikoff & D. Lee, *Asbestos and Disease* (1978). Thus, as with the raw coffee beans in comment p, there is no justification here for shifting responsibility for the harms of asbestos from defendant suppliers to Owens-Corning.

This conclusion is reinforced by two other courts which have addressed this precise question. In *Hammond*, the Illinois Supreme Court, adopting the rationale of the appellate court in that case, recently stated:

> [W]e conclude that raw asbestos is a product within the meaning of the Restatement. Although raw asbestos is processed before it is ultimately sold to consumers, raw asbestos and not some manufactured article caused the harm in this case. There was no change in the condition of the asbestos from the time it was sold until it reached the "ultimate user" ... The proclivity of raw asbestos to give off dust was certainly a condition that existed when the product left defendant's control. 105 Ill.App.3d 1033, 1037, 61 Ill.Dec. 843, 435 N.E.2d 540.

97 Ill.2d at 205, 73 Ill.Dec. at 356, 454 N.E.2d at 216.

In *Neal*, Judge Bechtle reached the same conclusion, relying on comment e to § 402A which provides:

> Normally the rule stated in this Section will be applied to articles which already have undergone some processing before sale, since there is today little in the way of consumer products which will reach the customer without such processing. The rule is not, however, so limited, and the supplier of poisonous mushrooms

which are neither cooked, canned, packaged nor otherwise treated is subject to the liability here stated.

He concluded that mined and milled asbestos, which remains hazardous to the user regardless of the degree of processing to which it is subjected, is a product for purposes of strict liability. These two decisions are consistent with the principles suggested in the Restatement, with New Jersey's approach to strict liability law, and with the recent decision in *Fischer*. Accordingly, I have determined that mined and milled asbestos is a product under § 402A of the Restatement (Second) of Torts and therefore defendants are subject to principles of strict liability.

Defendants argue that even if raw asbestos is deemed a product, the application of strict liability principles is unjustified here. In determining whether to apply the doctrine of strict liability, New Jersey courts have balanced the risk created by the product against its social utility.

> The theory is that only safe products should be marketed—a safe product being one whose utility outweighs its inherent risk, provided that risk has been reduced to the greatest extent possible consistent with the product's continued utility.

*Beshada v. Johns-Manville Products Corp.*, 90 N.J. 191, 200, 447 A.2d 539, 544 (1982), quoting *Freund v. Cellofilm Properties, Inc.*, 87 N.J. 229, 238 n. 1, 432 A.2d 925, 930 (1981). *See also, O'Brien*, 94 N.J. at 181, 463 A.2d at 304.

The defect alleged in the instant case is defendants' failure to warn. This type of defect does not technically involve a defect in defendant's product. Rather, it involves a determination that the product is not safe in the absence of adequate warnings of the dangers inherent in its use. Because imposing the requirement of an adequate warning will rarely detract from the utility of a product, the New Jersey Supreme Court has determined that strict liability principles are fully applicable in failure to warn cases. *Beshada*, 90 N.J. at 202, 447

A.2d at 545, *Freund*, 87 N.J. at 242, 432 A.2d at 932.

In this instance, the risks of not warning are obvious. There is no evidence that the utility of asbestos would be impaired by warnings. Nor is there evidence that warnings are either unfeasible or economically prohibitive. Thus, defendants' attempt to avoid application of strict liability principles must fail.

In the second portion of this summary judgment motion, plaintiffs seek to strike the interrelated defenses of sophisticated user and superseding cause. First, defendants claim that because they were selling their product to a knowledgeable consumer, they were absolved of a duty to warn and thus their product was not defective. Second, defendants contend that even if their product was defective because of their failure to warn, Owens-Corning's subsequent failure to adequately protect its employees from hazardous asbestos exposure was a superseding cause of plaintiffs' injuries.

A close examination of the sophisticated user defense along with prior interpretations of New Jersey law has led me to conclude that this defense should be available as to plaintiffs' negligence claims but not as to plaintiffs' strict liability claims.

■■ Crucial to this determination is an understanding of the distinctions between strict liability and negligence. The primary difference is that negligence law focuses on the reasonableness of defendants' conduct, while strict liability focuses on defendants' product without regard to conduct or fault. As set forth in *Freund*:

> [U]nder strict liability, the seller's knowledge is presumed; it is "assume[d] the seller knew of the product's propensity to injure as it did." In negligence cases, such knowledge must be proved; the standard is what the manufacturer "knew or should have known."

87 N.J. at 239, 432 A.2d at 930 (citations omitted).

■ A long line of New Jersey Supreme Court cases confirms that a seller's duty to warn of the hazards of its product under § 402A attaches without regard to its conduct. As discussed most recently by Justice Pollack in *O'Brien*: "In determining whether a manufacturer has breached its duty, we focus on the product. Under strict liability, a manufacturer that produces defective products is liable even if those products are carefully produced." 94 N.J. at 180, 463 A.2d at 303–04 (citations omitted). Moreover, this duty extends not just to the initial purchaser, but to all foreseeable users. *Id.*

■ It follows logically that the duty to warn under § 402A cannot depend on a particular buyer's knowledge or level of sophistication. *See, Campos v. Firestone Tire & Rubber Co.*, 192 N.J.Super. 251, 266, 469 A.2d 943, 952 (App.Div.1983) (Dreier, J. dissenting). Thus, in *Michalko v. Cooke Color & Chemical Corp.*, 91 N.J. 386 at 393, 451 A.2d 179 at 182 (1982), the New Jersey Supreme Court rejected defendant's claim that "an independent contractor has no duty to warn a knowledgeable buyer that a machine is dangerously designed." Rather, the court determined that the sophisticated purchaser's knowledge merely presents a question of fact with regard to proximate causation. *Id.* at 402, 451 A.2d at 187.

Recently the Third Circuit similarly rejected the sophisticated user defense under New Jersey products liability law. *Whitehead v. St. Joe Lead Co.*, 729 F.2d 238 (3d Cir.1984). Judge Gibbons, writing for the court, noted that in a failure to warn case under § 402A, the risks of failing to warn of a product's dangers are imputed to all sellers. One such risk is that employers using a product may not adequately warn their employees of the product's hazards. As knowledge of this risk is imputed, the court concluded, following *Michalko*, that an employer's sophistication cannot obviate a supplier's duty to warn but is relevant only to the issue of causation. At 253.

■ The Court observed that to hold otherwise would be inconsistent with the prin-

ciple under New Jersey's strict liability law that the duty to produce a safe product is non-delegable. As stated by Justice Procter in *Bexiga v. Havir Manufacturing Co.*, 60 N.J. 402, 410, 290 A.2d 281, 285 (1972):

> Where a manufacturer places into the channels of trade a finished product which can be put to use and which should be provided with safety devices because without such it creates an unreasonable risk of harm, and where such safety devices can feasibly be installed by the manufacturer, the fact that he expects that someone else will install such devices should not immunize him.

quoted, with approval, by the Third Circuit in *Whitehead*, 729 F.2d at 253. Again in *Finnegan v. Havir Manufacturing Co.*, 60 N.J. 413, 423, 290 A.2d 286, 292 (1972), a companion case, the court reiterated that in strict liability law "a manufacturer's expectation that a safety device will be provided by the purchaser is not relevant." While *Bexiga* and *Finnegan* are design defect cases, Judge Gibbons concluded that the rationale of those cases should apply equally to failure to warn cases. *Whitehead*, 729 F.2d at 253.

■■■ Thus, I conclude that defendants cannot be relieved of the duty to warn under § 402A. As knowledge of the risk that Owens-Corning may not warn its employees is imputed to defendants, they cannot absolve themselves of this duty by relying on Owens-Corning's sophistication.

■■■ Under negligence law, on the other hand, knowledge of the risk that an employer will not warn its employees is not imputed to suppliers. The scope of the duty to warn under negligence principles is governed by § 388 of the Restatement (Second) of Torts (1965). That section provides that:

> [o]ne who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

The applicability of the sophisticated user defense under § 388 has never been addressed by the New Jersey courts. However, in *Whitehead*, the Third Circuit recently analyzed this defense under New Jersey negligence law and predicted that the New Jersey courts would uphold it. Judge Gibbons stated: [u]nder § 388, the plaintiff must show that defendant negligently ignored or failed to discover" the risk that the "knowledgeable vendee" would not warn its employees. At 253. Because knowledge of this risk is not imputed, the court determined that the sophisticated user defense could not be foreclosed as a matter of law. Rather, whether defendant suppliers' failure to warn constituted negligence would depend on the employer's knowledge and, consequently, the reasonableness of their expectation that the employer would warn its employees.

■■■ This conclusion follows from the language of § 388 which focuses on what the supplier has reason to expect or foresee and what the user is likely to realize or discover. The question of whether defendants acted reasonably in relying on Owens-Corning to warn its employees is thus an appropriate inquiry under the language of § 388 of the Restatement. Indeed liability under the terms of § 388 depends upon a finding that defendants acted unreasonably in their failure to warn. Moreover, this inquiry is entirely consistent with negligence law's focus on conduct. Consequently, the defense of sophisticated user remains available to defendants on plaintiffs' causes of action in negligence.

A determination of the reasonableness of defendants' conduct turns on questions of fact and thus summary judgment cannot be granted with regard to this defense. *See, DeLong Corp.*, 662 F.2d at 1141.

While defendants raise the sophisticated user defense in an attempt to relieve themselves of the duty to warn, they rely on the defense of superseding cause for a determination that their acts were not the cause of plaintiff's injuries. I find no support under New Jersey law for plaintiff's contention that the superseding cause defense should be precluded as a matter of law.

■ Superseding cause has been defined under the Restatement (Second) of Torts § 440 (1965) as:

an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.

In defining this defense, the New Jersey Supreme Court stated in *Menth v. Breeze*, 4 N.J. 428, 441, 73 A.2d 183, 189 (1950), "[a] tort-feasor is not relieved of liability by the intervention of the acts of third persons...if those acts were reasonably foreseeable." *See also, Mack Trucks, Inc. v. Reading Co., Inc.*, 148 N.J.Super. 387, 372 A.2d 1108, (App.Div.1977), *Rappaport v. Nichols*, 31 N.J. 188, 156 A.2d 1 (1959), *Zinck v. Whelan*, 120 N.J.Super. 432, 294 A.2d 727 (App.Div.1972). These cases emphasize that foreseeability is central to the defense of superseding cause under New Jersey law.

■ Without question this defense is available with regard to plaintiffs' negligence claims. *See, e.g., Mack Trucks, Inc.*, 148 N.J.Super. at 395, 372 A.2d at 1111. Plaintiffs argue, however, that the concept of foreseeability, which implicates defendants' conduct, is foreign to the doctrine of strict liability and thus not applicable to such claims. Yet, while New Jersey courts have avoided analyzing a defendant's conduct to determine duty under strict liability law, they have not narrowed the concept of proximate causation. The plaintiff must still demonstrate that a defect in the sell-

er's product was the proximate cause of injury. *O'Brien*, 94 N.J. at 179, 463 A.2d at 303. In connection with the issue of proximate cause, the defendant may then assert the defense that plaintiff's employer's conduct constituted a superseding cause which would relieve the defendant of liability.

The availability of this defense under strict liability law is confirmed by the New Jersey Supreme Court's decision in *Freund*. There the court held that even where plaintiff's employer is not a defendant before the court, the jury must be instructed to consider its role in the formulation of proximate cause. 87 N.J. at 248 fn. 5, 432 A.2d at 934. Had the court intended to eliminate the defense of superseding cause in strict liability, it would certainly not allow the jury to weigh the employer's role in the chain of causation. For the jury may consequently assess 100% causation against the employer, thereby rendering the employer the superseding cause of plaintiffs' injuries.

This conclusion is reaffirmed by the *Michalko* court's determination that plaintiff's employer's conduct is relevant to the question of proximate causation under strict liability law. 91 N.J. at 402, 451 A.2d at 187. Accordingly, this defense will not be foreclosed as to plaintiffs' strict liability claims.

■ As stated by Judge Pressler in *Torsiello v. Whitehall Laboratories*, 165 N.J.Super. 311, 398 A.2d 132, 140 (App.Div. 1979), "It is ... well settled that ordinarily questions as to proximate cause and the effect, in exculpatory terms, of intervening causes, are for the jury." *See also, Michalko*, 91 N.J. at 402, 451 A.2d at 187. Thus, the effect of Owens-Cornings' actions on the issue of proximate cause must be determined by the finder of fact and cannot be resolved on this summary judgment motion.

In sum, for the reasons set forth herein, plaintiffs motion for partial summary judgment will be granted insofar as it seeks a determination that raw asbestos is a prod-

uct for purposes of strict liability. Additionally, the defense of sophisticated user will be barred with respect to plaintiff's claims lying in strict liability but will be available as to plaintiffs' negligence claims. The defense of superseding cause will be available as to both strict liability and negligence claims.