209 N.J. Super. 456 (1986)
507 A.2d 803
STANLEY OLENCKI AND KATHRYN OLENCKI, HIS WIFE, PLAINTIFFS,
v.
MEAD CHEMICAL CO., MEAD TECHNOLOGIES, INC., GCA CORP., AND FISHER SCIENTIFIC CO., DEFENDANTS.
Superior Court of New Jersey, Law Division Somerset County.
Decided February 14, 1986.
*458 Richard J. Schachter for plaintiffs (Schachter, Cohn, Trombadore & Offen, attorneys).
Douglas E. Burns for defendants Mead Chemical Co. and Mead Technologies, Inc. (Kasen, Kraemer, Burns & Lovell, attorneys).
Michael S. Feldman for defendant Fisher Scientific Co. (Ozzard, Rizzolo, Klein, Mauro, Savo & Hogan, attorneys).
*459 Edward R. Schwartz for defendant GCA Corp. (Schwartz & Andolino, attorneys).
ARNOLD, J.S.C.
This is a personal injury action. Plaintiff, Stanley Olencki, was severely burned while working for the Radio Corporation of America ("RCA") at one of its manufacturing facilities. He was operating a photomask coater-developer machine when a glass bottle of developer fell from a storage rack above the machine, broke, and the developer caught fire. Plaintiff brought suit against three defendants: GCA Corp. ("GCA") which manufactured and sold the machine to RCA; Mead Technologies, Inc. ("Mead") which sold the developer to RCA, and Fisher Scientific Co. ("Fisher") which supplied a component of the developer to Mead. Plaintiff alleges that each defendant is strictly liable for his injuries as well as negligent in failing to warn RCA employees of the dangers involved in the use of the machine and developer. RCA is not a party to this action pursuant to the applicable provisions of the Workers' Compensation Act, N.J.S.A. 34:15-7 et seq.
This is the return day of a motion in limine brought by plaintiff to preclude defendants from presenting evidence or argument to the jury relating to the alleged negligence of RCA. The motion raises the issue of whether the related defenses of "sophisticated user" and superseding cause are available to meet plaintiff's negligence claims.
As manufactured and sold by GCA, the bottles of developer used in the operation of the machine were kept in a cabinet which was part of the machine. After RCA purchased the machine from GCA, RCA changed the location of the bottles placing them above the machine on a storage rack which RCA attached to the machine. RCA also modified the machine by the addition of an infrared lamp used to reduce problems due to high humidity. The lamp, which was freestanding, was located *460 approximately 30 inches below the bottle of developer and 14 inches to the side.
On the day Olencki was injured, he had been working in the area of the machine for approximately 15 minutes before the accident. He had started the developing process and had turned on the lamp when he noticed that a bottle of developer was almost empty. He removed the bottle from the rack, replaced it with a full bottle, and was in the process of clearing air bubbles from the line from the new bottle to the machine when the bottle fell from the rack, broke, and the infrared lamp ignited the developer. Olencki was severely burned by the resulting fire.
The developer sold to RCA by defendant, Mead, consisted of methyl ethyl ketone and ethanol, a highly flammable solution. Mead had purchased the methyl ethyl ketone from defendant Fisher who supplied it in glass bottles. Mead mixed the methyl ethyl ketone with ethanol and rebottled the developer in the same glass bottles in which Mead had purchased the methyl ethyl ketone from defendant Fisher.
Plaintiff alleges that the machine sold by GCA to RCA was defective in design because it did not provide a means for safely storing the chemical developer which GCA allegedly knew was highly flammable and would be used by RCA in the operation of the machine. In addition, plaintiff charges GCA with negligence on the grounds that its service technicians visited the RCA plant several times to repair the machine, that they observed or should have observed the various modifications made to the machine "and did not advise of any corrective actions, although they knew or should have been aware of the dangers."
Plaintiff alleges that defendant Mead manufactured, distributed and sold the developer, and that it was defective because it was improperly labelled, had improper warnings and that it was packaged in defective containers. In addition, plaintiff alleges *461 that Mead was "negligent in the labelling and packaging of the developer."
Finally, plaintiff alleges that the container in which Fisher sold Mead the methyl ethyl ketone contained the same design defects as are alleged against defendant Mead. Plaintiff also alleges that Fisher "was negligent in the manufacture and distribution of its containers for the use of highly flammable materials."
Plaintiff's moving papers indicated that plaintiff sought to exclude any evidence relating to RCA's alleged negligence, including modification of the GCA machine. However, plaintiff conceded in its reply papers that the evidence of RCA's modification of the GCA machine is admissible on the issue of causation. Indeed, there can be no question that evidence of RCA's modification of the machine is admissible on the issues of whether the machine underwent substantial change after leaving GCA's control, whether the modification was reasonably objectively foreseeable, and whether GCA could have implemented design changes in the machine which were within the state of the engineering art at the time of its manufacture which could have prevented or reduced the likelihood of such alterations. Brown v. United States Stove Co., 98 N.J. 155 (1984); Soler v. Castmaster, Div. of H.P.M. Corp., 98 N.J. 137 (1984); O'Brien v. Muskin Corp., 94 N.J. 169 (1983); Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386 (1982).
Plaintiff now seeks to exclude any evidence of RCA's conduct unrelated to the alteration of the machine. Specifically, plaintiff seeks to exclude the following: evidence concerning RCA's alleged failure to instruct its employees properly; its alleged failure to conduct safety seminars; its alleged failure to recognize the risk of injury, and its alleged failure to follow its own safety standards concerning hazardous materials.
At oral argument, plaintiff took the position that such evidence was inadmissible because of the holdings in Johnson v. Salem Corp., 97 N.J. 78 (1984) and Butler v. PPG Industries *462 Inc., 201 N.J. Super. 558 (App.Div. 1985). Defendants argue that such evidence of RCA's negligence is admissible with respect to the interrelated defenses of "sophisticated user" and superseding cause. Defendants principally rely upon the opinion of Judge Ackerman in Menna v. Johns-Manville Corp., 585 F. Supp. 1178 (D.N.J. 1984).
The Supreme Court in Johnson and the Appellate Division in Butler held that in a strict liability action brought against a manufacturer of a product for injuries sustained by an employee of a purchaser in using the product, evidence of the employer's negligence in failing to protect the employee from injury in the use of the product is inadmissible. The Appellate Division's reasoning was twofold. First, public policy was said to bar such evidence to insure that defective products are not placed in the channels of trade. To promote this policy a manufacturer has a duty to take "feasible steps to render his products safe and the manufacturer may not rely on the haphazard conduct of the ultimate purchaser to remedy or protect against defects for which he is responsible." Butler, supra, 201 N.J. Super. at 563. Second, a jury will not be permitted to infer that the employer's negligence was the exclusive proximate cause of the accident. Id. at 564. Thus, Olencki's motion is granted with respect to those counts of his complaint which allege either design defects in the machine or in the products supplied by GCA, Mead and Fisher. Because strict liability principles are fully applicable in failure-to-warn cases, Beshada v. Johns-Manville Products Corp., 90 N.J. 191 (1982), plaintiff's motion is also granted as to those counts of the complaint which sound in strict liability for failure to warn.
The complaint also alleges that GCA, Mead, and Fisher were negligent in failing to warn employees of RCA. Specifically, the sixth count of the complaint alleges that GCA was negligent because its representatives had an opportunity to observe the operation of the modified machine but did not warn RCA's employees about the hazards involved. Similarly, counts five *463 and nine allege that Mead and Fisher were negligent in the labelling and packaging of the developer. Defendants argue that evidence of RCA's alleged negligence is admissible as to the allegations of negligence. Defendants contend that they were absolved of the duty to warn because RCA was a "sophisticated purchaser." They also claim that RCA's failure to warn its employees was the superseding cause of plaintiff's injuries.
There is an important difference between these negligence counts and the strict liability counts. Constructive knowledge of the dangers to foreseeable users is imputed to a defendant in a strict liability action. There is no need to prove that the manufacturer knew or should have known of any dangerous propensity of its product in a strict liability action. Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 239 (1981). Furthermore, knowledge of the risk that employers may not adequately warn their employees is imputed to the defendants in a strict liability action. Whitehead v. St. Joe Lead Company Inc., 729 F.2d 238, 247 (3 Cir.1984). Thus, in a strict liability action against a manufacturer, the manufacturer cannot be absolved of the duty to warn. However, under negligence law, knowledge of the risk that an employer will not warn its employees is not imputed to a manufacturer. Instead, the scope of the duty to warn is governed by § 388 of the Restatement, Torts 2d (1965). Under § 388, plaintiff must show defendant negligently ignored or failed to discover the risk that the employer would not warn its employees. Whether the manufacturer's failure to warn constituted negligence would depend on the employer's knowledge and, consequently, the reasonableness of the manufacturer's expectation that the employer would warn its employees. Thus, the "sophisticated user" defense has been held available under § 388. See Whitehead v. St. Joe Lead Co., Inc., supra, 729 F.2d at 253 and Menna v. Johns-Manville Corp., supra, 585 F. Supp. at 1184. This court is persuaded by the reasoning of Judge Ackerman in Menna and finds that the "sophisticated user" defense is available to defendants here as to plaintiff's negligence claims *464 under New Jersey law. Accordingly, defendants may offer evidence concerning RCA's alleged negligence in defense of plaintiff's causes of action in negligence.
Defendants also urge that evidence of RCA's alleged negligence is admissible on the issue of superseding causation with respect to the negligence counts relying on Freund v. Cellofilm Properties, Inc., supra, 87 N.J. at 229. That case seems, on first examination to support defendant's contention. In Freund, plaintiff sued for injuries received in an industrial accident at his employer's paint manufacturing plant. Id. at 232. Ultimately, the case was presented to the jury on a negligence theory. Id. at 233. Plaintiff had requested a charge stating that the jury could find defendant-manufacturer negligent for marketing a defective product even if it concluded that plaintiff's employer, who was no longer in the case, was also negligent in failing to provide adequate warnings on the dangers of the product to its employees. The trial judge declined to give that charge. Id. at 235. The Supreme Court directed that in such situations a charge based on concurrent negligence should be given. Id. at 247. Implicit in that holding would seem to be a determination that the defense of superseding cause is available as to the negligence counts. However, in Butler v. PPG Industries, 201 N.J. Super. 558 (App.Div. 1985), the Appellate Division rejected such an interpretation. Id. at 564. Relying upon Johnson, where the Supreme Court held that the alleged negligence of the employer could not exculpate the manufacturer, the Butler court limited Freund's applicability to its specific circumstances. Accordingly, defendant's argument that RCA's alleged negligence is admissible on the issue of superseding cause is rejected.
Accordingly, it is ordered that:
1. Defendants shall be permitted to offer evidence regarding RCA's modification of the machine purchased from defendant GCA;
*465 2. Defendants shall not offer any evidence concerning other alleged negligence of RCA with respect to plaintiff's strict liability claims; and
3. Defendants may offer evidence concerning the alleged negligence of RCA in defense of plaintiff's negligence claims.