214 N.J. Super. 680 (1986)
520 A.2d 849
GABRIEL LOPEZ AND CECILIA LOPEZ, HIS WIFE, PLAINTIFFS,
v.
THE ENTWISTLE COMPANY, ABC CORP. (A FICTITIOUS NAME), AND XYZ CORP. (A FICTITIOUS NAME), DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided October 9, 1986.
*681 John M. Blume, Esq. (Blume, Vazquez, Goldfaden, Berkowitz, Oliveras & Donnelly, attorneys) for plaintiffs.
Keith G. Von Glahn, Esq. (Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys) for defendant, The Entwistle Co.
WERTHEIMER, J.S.C.
This matter of first impression came before the Court on a pre-trial motion in limine to prevent defendant from offering evidence in this products liability action about post-manufacturing offers to supply barrier guards to plaintiff's employer. Plaintiff seeks compensatory and punitive damages.
It is uncontroverted that when the machine in question, a spiral can winding machine, was manufactured it was sold to plaintiff's employer without the barrier guards. This Court also assumed for the purposes of the motion that defendant knew or should have known that such guards were available. This Court concluded, therefore, for the purposes of this motion that the machine was "defective" when sold to plaintiff's employer.
*682 In support of his motion plaintiff relied primarily on the holdings in Johnson v. Salem Corp., 97 N.J. 78 (1984), and Butler v. PPG Industries, Inc., 201 N.J. Super. 558 (App.Div. 1985). The Supreme Court noted in Johnson, supra, 97 N.J. at p. 94. "The manufacturer cannot escape its duty to install guards by alleging that the employer should have installed them or provided other safety devices. See, e.g., Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 397 (1982); Finnegan v. Havir Mfg. Co., 60 N.J. 413, 423 (1972); Bexiga v. Havir Mfg. Co., 60 N.J. 402, 410 (1972)."
The Appellate Division confirmed this holding in Butler, supra, 201 N.J. Super. at 564 when it decreed that a "jury will not be permitted to infer that the purchaser's negligence was the exclusive proximate cause of the accident when defendant alleges the buyer failed to take steps against a defect created by the manufacturer." However, the Butler Court also stated:
In order to exculpate, itself the manufacturer must prove an intervening superseding cause (was the) . .. sole proximate cause of the injury.
Ibid.
The seminal cases in the area in question were Bexiga v. Havir Manufacturing Corp. and Finnegan v. Havir Manufacturing Corp., supra. The thrust of the Supreme Court's opinions in both cases was succinctly put: "(t)o the extent that the rule (Restatement, Torts 2d, § 402A (1965)) absolves the manufacturer of liability where he may expect the purchaser to provide safety devices ... it should not be applied." Bexiga, supra, 60 N.J. at p. 410. Our Supreme Court correctly opined that there was a public interest to assure the installation of safety devices and the only certain way to insure this was done was to impose the duty on the manufacturer whenever feasible.
This Court does not believe, however, that the Supreme Court intended that a manufacturer of a defective machine would remain liable for eternity even when it attempts to correct the defect post-sale. It is equally in the public interest for defective and potentially dangerous machines to be rectified. Once a manufacturer has made a mistake, it should not be dissuaded *683 from correcting that mistake, and it should not be forever placed in jeopardy of defending countless lawsuits for injuries which could have been averted and the potential consequential loss of its business.
Common sense, fundamental fairness and justice demand that a manufacturer be able to protect itself by curing a defective product after sale. Defendant seeks the opportunity to establish before this Court that it contacted plaintiff's employer years after the sale to advise that it had guards available to protect operators from the very "zone of danger" which caused the injury in this case. The employer allegedly responded that the machine had been "mothballed" and was no longer in use. In fact, the employer supposedly said it had abandoned the type of manufacturing operation for which the winder was originally purchased. This Court does not comment now on the manner of proof but only the right to attempt to adduce such proof.
The proofs go directly to the issue of proximate cause. What was defendant to do after the employer's representations? This is not a situation where, at the time of the aforementioned communications, defendant was relying on the plaintiff's employer to safely guard the product. It is, therefore, distinguishable from Johnson, Butler, Michalko, Finnegan and Bexiga, supra. The case is also distinguishable from Stephenson v. R.A. Jones & Co., Inc., 103 N.J. 194 (1986), for several reasons. First the issue under consideration in Stephenson seemed to exclusively deal with the questions of contribution and common law indemnity between the manufacturer and the plaintiff's employer and not the question of causation. Second, at all times relevant the manufacturer in Stephenson knew the machine in question was still in use, contrary to the employer's representations herein.
The defense that the accident was caused not by the manufacturer originally placing a defective product in the marketplace but rather by an efficient intervening responsible or *684 superseding act is clearly recognized in this State. See Torsiello v. Whitehall Laboratories, 165 N.J. Super. 311, 377 (App. Div. 1979). Therein, Judge Pressler noted: "It is also well settled that ordinarily questions as to proximate cause and the effect, in exculpatory terms, of intervening causes are for the jury." United States District Court Judge Ackerman held the defense available with respect to the employer's acts and strict liability claims in Menna v. Johns-Manville, 585 F. Supp. 1178 (D.C.N.J. 1984). Allowing the jury to consider the question of whether an intervening cause absolves the manufacturer in products liability suits finds support in other jurisdictions. See Balido v. Improved Machinery, Inc., 29 Cal. App.3d 633, 105 Cal. Rptr. 890 (2d Dist. 1973), and Gracyalny v. Westinghouse Elec. Corp., 723 F.2d 1311 (7th Cir.1983).
Thus, defendant will be given the opportunity to convince the jury upon the submission of appropriate proofs that the proximate cause of the accident was not the originally defectively designed machine but, rather, plaintiff's employer's putting a "mothballed" machine back on line, without notice to the manufacturer, after it had notice that guards were available for it. If the jury determines this action by plaintiff's employer was reasonably foreseeable, the defendant will not be absolved from liability. Menth v. Breeze Corporation, Inc., 4 N.J. 428 (1950). Martin v. Bengue, Inc., 25 N.J. 359 (1958); Rappaport v. Nichols, 31 N.J. 188 (1959); Polyard v. Terry, 160 N.J. Super. 497 (App.Div. 1978); Torsiello v. Whitehall Laboratories, etc., supra. As stated in Menth, supra, 4 N.J. at 442:
One who creates a dangerous condition cannot escape liability for the natural and probable consequences thereof....
but "the connection between the defendant's negligence (or strict liability) and the plaintiff's injury may be broken by an intervening cause."
The intervening cause must be found to be either "responsible" or "superseding". Menth, supra. However, a jury cannot absolve this defendant by finding a "superseding" cause by definition, e.g., a cause that "supersedes the operation of the *685 defendant's negligence that it alone, without (defendant's) negligence contributing thereto in the slightest degree, produces the injury", Menth, supra, because of the rationale of Johnson, supra. Because the winder was manufactured without the guard in question, defendant's actions clearly contributed to the accident in some degree.
However, the trier of fact may find the intervening actions of the employer to be "responsible," e.g. a culpable act by an entity legally responsible to act. Thus, the dispositive inquiry is should the action by the employer in bringing back to use a discarded unguarded winder have been anticipated by defendant in "the natural and ordinary course of things"? Menth, supra. If so, defendant will not be absolved from liability. On the other hand, if the jury finds the employer's action, or inaction, to be "an independent cause which intervene(d) between the original act or omission and the injury (such as to) turn aside the natural sequence of events, and produce a result which would not otherwise have followed and which could not have been reasonably anticipated", it may find the causal connection of defendant's wrongdoing broken and the defendant not liable. See Black's Dictionary of Law, 5th Ed. "Intervening Cause."
It would be disingenuous of this Court not to note that plaintiff's prayer for punitive damages clearly makes the alleged communications in question relevant to that issue alone, as it is axiomatic that exemplary damages focus in large part on defendant's knowledge, conduct and state of mind. Therefore, plaintiff could still abandon that claim in ordinary circumstances in order to avoid the proposed proofs in question. This Court, however, advised plaintiff's attorney that it believes the proofs appropriate, for the reasons set forth above, as to the basic liability questions; therefore, plaintiff could not escape these proofs at any rate by waiving the claim for punitive damages in this case.
*686 As stated above, it is inconceivable that once someone makes a mistake our law will grant no opportunity to rectify that mistake. Manufacturers of defective products must be given an opportunity to cure defects not only for their own benefit in escaping eternal exposure to growing monetary verdicts, but this opportunity should be encouraged and nurtured by our courts in order to protect those in the workplace and society in general.
This was not a situation where the defendant expected the employer to install the guards; that would not be sufficient for the manufacturer to avoid liability. This was a situation where the defendant was told the machine was, in fact, no longer in use. Fortunately, our system still financially protects the workers that may not succeed in a third party suit as a result of this defense through our workers' compensation laws and the benefits that flow therefrom.